**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MARTHA McCONVILLE,**

                        **Plaintiff,**

  vs.                                              3:15-cv-00967
                                                         (MAD/DEP)

**JEREMY MONTRYM, JENNIFER YOUNG,
JENNIFER WINTERMUTE, SHAWN BYRNE,
JOHN WEMPLE, KEVIN ABRAMS,
MICHAEL FRANKO, MICHAEL AMATO, and
THE COUNTY OF MONTGOMERY,**

                        **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **LAW OFFICES OF ELMER ROBERT KEACH, III, P.C.**<br>One Pine West Plaza, Suite 109<br>Albany, New York 12205<br>Attorneys for Plaintiff | **ELMER R. KEACH, ESQ.**<br>**MARIA K. DYSON, ESQ.** |
| **OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants Montrym<br>and Young | **MARIA E. LISI-MURRAY, ESQ.** |
| **McCABE, MACK LAW FIRM**<br>P.O. Box 509<br>63 Washington Street<br>Poughkeepsie, New York 12602<br>Attorneys for Defendants Wintermute,<br>Wemple and Abrams | **DAVID L. POSNER, ESQ.** |
| **GOLDBERG, SEGALLA LAW FIRM**<br>8 Southwoods Boulevard<br>Suite 300<br>Albany, New York 12211<br>Attorneys for Defendants Byrne, Franko,<br>Amato and the County of Montgomery | **JONATHAN M. BERNSTEIN, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff Martha McConville ("Plaintiff"), as Administratix of the Estate of Kenneth McConville ("Decedent"), brought this action pursuant to 42 U.S.C. § 1983 and state law against Jeremy Montrym, Jennifer Young, Jennifer Wintermute, Shawn Byrne, Jon Wemple, Kevin Abrams, Michael Franko, Michael Amato, and the County of Montgomery ("Defendants") on August 7, 2015, alleging various violations of Decedent's constitutional rights.

Presently before the Court is Wintermute, Wemple and Abram's (the "Montgomery County Defendants") partial motion to dismiss Plaintiff's first cause of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**II. BACKGROUND**

The conduct giving rise to these claims occurred on the evening of May 9, 2014, when Decedent, a 37-year-old male allegedly in good health, died at the Montgomery County Jail from cardiorespiratory arrest caused by a severe overdose of alcohol and oxycodone.[1] Decedent was arrested at approximately 8:45 p.m. by Thomas Malley, a Fort Plains Police Officer. *See* Dkt. No. 1 at ¶ 17. Plaintiff alleges upon information and belief that the Decedent swallowed a "toxic amount" of oxycodone at some point during the course of his arrest. At the time of arrest, Officer Malley and another witness observed that Decedent was intoxicated, covered in urine, smelled strongly of alcohol, and was speaking incoherently. *Id.* at ¶ 18. Decedent was subsequently

---

[1] The exact circumstances of Decedent's death are still being investigated by the New York State Police and the New York State Commission of Correction. Plaintiff bases these allegations on Decedent's autopsy report.

2

transferred into Defendants Montrym and Young's custody and transported to the State Police Barracks in Fonda, New York. *See id.* at ¶ 19.

Plaintiff alleges that Decedent was in the sole custody of the New York State Police for approximately three hours, and that during this time, Decedent suffered from symptoms generally associated with severe intoxication and drug overdose, including incoherency, motor impairment, and dizziness. *Id.* Plaintiff also alleges that Defendants Montrym and Young were aware of Decedent's severe intoxication. *Id.* Additionally, Plaintiff made repeated requests to be taken to the hospital that were denied. *Id.*

Plaintiff claims that despite their awareness of Decedent's severe intoxication given his presenting symptoms, Defendants Montrym and Young refused to take Decedent to the hospital, never requested a medically trained professional to evaluate him, and failed to perform a Preliminary Breathalyzer Test ("PBT") to confirm Decedent's blood alcohol content. *Id.* at ¶ 20. Plaintiff contends that had Defendants Montrym and Young performed the PBT, "it would have been immediately apparent that [Decedent] was at high risk of alcohol poisoning and death." *See id.* Plaintiff draws this inference from Decedent's blood alcohol content of 0.15 at the time of his autopsy, which was allegedly performed approximately six-to-eight hours after he was in the custody of the Montgomery County Defendants. *See id.*

Defendants Montrym and Young transported Decedent to the Montgomery County Jail at or about 11:30 p.m. Defendants Wintermute, Wemple and Abrams were responsible for processing Decedent and performing his initial medical screening. *Id.* at ¶¶ 23, 26. Plaintiff claims that Defendant Wintermute determined that Decedent was intoxicated after asking Defendants Young and Montrym about Decedent's behavior. *See id.* Both Decedent and Defendants Montrym and Young informed Defendant Wintermute that Decedent recently

consumed alcohol and had a history of alcohol and substance abuse. *Id.* At this time, Plaintiff also alleges that it was immediately apparent to Defendants Wintermute, Wemple and Abrams that Decedent was intoxicated because he continued to display the "telltale signs" of drug overdose and alcohol poisoning, including "vomiting, aspiration, confusion, dizziness, drowsiness, impaired coordination, and trouble breathing." *Id.* at ¶¶ 23, 25. Due to Decedent's obvious symptoms, Plaintiff claims that Defendant Wintermute requested the assistance of her supervisor, Defendant Byrne, because of her lack of experience in booking intoxicated detainees. *Id.* Plaintiff alleges that Defendants Montrym and Young informed Wintermute and Byrne that Decedent requested to go to the hospital.[2]

Plaintiff asserts that Decedent's medical condition was not properly evaluated at the Montgomery County jail for various reasons. First, while Decedent was being processed at the jail, Defendant Byrne attempted unsuccessfully to find an Alco-sensor to accurately determine Decedent's blood alcohol content. *Id.* at ¶ 25. Plaintiff attributes this failure to the facility's lack of medical employees scheduled to work in the infirmary during the night shift, and/or the facility's failure to train its corrections staff regarding the whereabouts of the PBT device. *Id.* Plaintiff alternatively claims that the facility "failed to train their corrections staff on the importance of determining a detainee's blood alcohol content given the serious complications that can occur in the absence of medical supervision." *See id.* Additionally, Plaintiff maintains that Decedent's medical condition was not adequately evaluated because his initial medical screening was performed by Defendants Wintermute, Wemple and Abrams, who lacked prior medical training. *Id.* at ¶ 26. Lastly, after completing the booking and medical screening paperwork,

---

[2] Plaintiff pleads in the alternative that Defendants Montrym and Young failed to inform the Montgomery County Defendants that Decedent had requested to go to the hospital. *See id.* at ¶ 24.

4

Wintermute, Wemple and Abrams failed to recommend that Decedent be placed on constant supervisory status which, according to Plaintiff, would have required continuous monitoring of his condition by corrections and medical staff. *Id.* at ¶ 27. Defendant Byrne specifically approved their work and the decision to not place Decedent on constant supervisory status. *Id.*

Over the next several hours, Plaintiff claims that Decedent was never taken to the hospital or evaluated by medical staff, and was instead only monitored by corrections staff "merely look[ing] into the window of his holding cell." *See id.* at ¶ 27. Plaintiff disputes documents prepared by the corrections staff, which indicate that Decedent died approximately four hours after his admission to the County Jail. Plaintiff argues that the corrections staff, who allegedly observed that Decedent was alive approximately 20 minutes before he was found dead, were mistaken or untruthful in their estimation that Decedent died four hours after his admission to the county jail. Plaintiff relies on the fact that emergency responders, who evaluated Decedent within 20 minutes of his body being found, reported that his body was "cool to the touch" and displaying "signs of lividity in his arms, legs, and abdomen." *Id.* at ¶ 28. Since Plaintiff asserts that signs of lividity take hours to occur, Plaintiff reasons that Decedent died within approximately one to two hours of his admission. *See id.*

According to Plaintiff, her belief that Decedent's death was caused by Defendants' negligence and/or deliberate indifference is further strengthened by the Commission of Correction's ongoing investigation, which Plaintiff attributes to the Commission's "significant concerns regarding the circumstances" surrounding Decedent's death. *Id.* at ¶ 30. Additionally, Plaintiff cites to other incidents where a detainee has died or been seriously injured due to the Montgomery County Jail's policies, procedures and training. Specifically, Plaintiff points to the

following incidents involving the Montgomery County Jail staff's denial of adequate medical treatment to detainees:

> **James Vandermark.** The Montgomery County Jail failed to provide timely and appropriate treatment to Mr. Vandermark, who repeatedly requested medical assistance, and exhibited extreme medical symptoms, resulting in his death.
>
> **Kurtis Glasser.** The Commission of Corrections instructed Defendant Amato and Defendant Franko to review their booking procedures, and constant supervision procedures following the suicide of Mr. Glasser, who was exhibiting obvious signs of depression.
>
> **Robert Staley.** Mr. Staley, a detainee with an above-the-knee amputation, was repeatedly denied medical assistance, and proper disability accommodations, and as a result, he fell on his amputated leg, suffering severe bone fractures.
>
> **Starvation Class Action.** Perry Hill, on behalf of a class of other detainees, maintains that Montgomery County intentionally provided detainees at the Montgomery County Jail with an insufficient diet that caused a range of medical and psychological problems [for the] proposed class members. This inadequate diet, which is the result of Sheriff Michael Amato and Jail Administrator Michael Franco's wantonly cruel conduct, has, amongst other consequences, caused inmates to develop scurvy, to stop menstruating, and to resort to unconventional food sources, such as cocoa butter and toothpaste, to assuage their hunger.

*See id.* at ¶ 32. Plaintiff alleges that Defendant Franko, the Jail Administrator, and Michael Amato, the Sheriff of Montgomery County, were responsible for promulgating the policies and practices at issue in this case. *See id.* at ¶ 44.

### III. Procedural History

Plaintiff's complaint alleges the following causes of action: (1) Defendants Montrym, Young, Wintermute, Byrne, Wemple and Abrams were deliberately indifferent to Decedent's serious medical needs in violation of the Fourteenth Amendment; (2) Defendants Montgomery County, Franko and Amato implemented municipal policies and practices that directly violated

6

Decedent's constitutional rights, failed to implement municipal policies to avoid constitutional deprivations and/or failed to train and supervise employees in violation of the Eighth Amendment; and (3) Defendants were negligent in failing to address Decedent's conscious pain and suffering in violation of state law. *See id.* at 10-14. Plaintiff seeks punitive damages against Defendants Montrym, Young, Wintermute, Byrne, Wemple, Abrams, Franko and Amato.

On October 2, 2015, Defendants Wintermute, Wemple and Abrams moved to partially dismiss Plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6) with respect to Plaintiff's first cause of action alleging violations of Decedent's Fourteenth Amendment rights due to Defendants' deliberate indifference to Decedent's serious medical needs. *See* Dkt. No. 16.

## IV. DISCUSSION

**A. Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.      Section 1983 Deliberate Indifference Standard**

Section 1983 provides plaintiffs with a cause of action against government officials who, acting under the color of government authority, have subjected a plaintiff to "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001). Section 1983 is "not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). To establish a Section 1983 claim, a plaintiff must demonstrate two elements: "(1) 'the act complained of was committed by a person acting under

8

color of state law'; and (2) 'this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Greenwich Citizens Comm. v. Counties of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 29-30 (2d Cir. 1996) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

A claim for deliberate indifference to a pre-trial detainee's serious medical needs is properly analyzed under the Fourteenth Amendment. *See Gabriel v. Cty. of Herkimer*, 889 F. Supp. 2d 374, 392 (N.D.N.Y. 2012). Where a person is held prior to trial, "'the cruel and unusual punishment proscription of the Eighth Amendment does not apply' because 'as a pretrial detainee [the plaintiff is] not being punished.'" *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)). Instead, a detainee held prior to conviction in state custody receives protection against mistreatment by prison officials under the Due Process Clause of the Fourteenth Amendment. *Id.* However, the standard is the same regardless of whether a deliberate indifference claim is brought pursuant to the Eighth or the Fourteenth Amendment. *See Gabriel*, 889 F. Supp. 2d at 392.

In order to establish a claim for inadequate medical care, the claimant is required to prove "deliberate indifference to his serious medical needs." *See Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). Pursuant to the Fourteenth Amendment, "the official custodian of an unconvicted detainee may be found liable for violating the detainee's constitutional rights if the official disregarded a risk of harm to the plaintiff of which the official was aware." *Gabriel*, 889 F. Supp. 2d at 392 (citing *Caiozzo*, 581 F.3d at 71). The custodian's liability is dependant on a two prong showing: "(1) that the detainee had a 'serious medical condition,' (2) which the defendant met with 'deliberate indifference.'" *Id.* (quoting *Caiozzo*, 581 F.3d at 72). The deliberate indifference standard incorporates both

objective and subjective elements. *Smith*, 316 F.3d at 183-84. "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Id.* at 392 (internal citations and quotations omitted).

Under the first, objective prong, the plaintiff must demonstrate that the alleged deprivation of medical care was "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration or extreme pain exists." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Where the plaintiff alleges that the defendant failed to provide any medical treatment for his or her condition, "'courts examine whether the inmate's medical condition is sufficiently serious.'" *See Gabriel*, 889 F. Supp. 2d at 392 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). By contrast, where the alleged deprivation concerns the adequacy of the treatment provided, the inquiry centers on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Id.* at 393 (citing *Smith*, 316 F.3d at 186).

With regard to the second, subjective prong, the plaintiff must demonstrate that the "defendant acted with the requisite culpable mental state, that is, with reckless disregard to a known substantial risk of harm." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). In evaluating a detainee's claim for deliberate indifference to serious medical need, "deliberate indifference" constitutes a mental state more blameworthy than negligence, and is a state of mind that is the equivalent of criminal recklessness. *Id.* (explaining that the plaintiff need not prove that the defendant intended for the plaintiff to suffer harm, but rather that the defendant's actions amount to more than mere negligence). Under this standard, it is enough that the defendant "knows of and disregards an excessive risk to [the detainee's] health or safety." *Douglas v.*

10

*Stanwick*, 93 F. Supp. 2d 320, 324 (W.D.N.Y. 2000) (citing *Hathaway*, 99 F.3d at 553) The officer must also "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See id.*

### *1. Objective Prong: Detainee's Serious Medical Need*

In the present case, Defendants do not dispute that Decedent had a serious medical need. Here, the complaint alleges that Decedent swallowed a toxic amount of oxycodone, smelled strongly of alcohol, was covered in urine, and exhibited numerous presenting symptoms of overdose and intoxication, including incoherency, motor impairment, dizziness, vomiting, impaired coordination, confusion, and trouble breathing. Decedent also made repeated requests to be taken to a hospital. Construing the facts in the light most favorable to Plaintiff, such allegations plausibly plead a serious medical condition under the objective prong of the deliberate indifference analysis. *See Bradway v. Town of South Hampton,* 826 F. Supp. 2d 458, 471-72 (E.D.N.Y. 2011) (finding that the decedent suffered from a serious medical need due to risks associated with his cocaine ingestion); *see also Iacovangelo v. Correctional Medical Care, Inc.*, 624 Fed. Appx. 10, 13 (2d Cir. 2016) (holding that the plaintiff suffered from a serious medical condition after she acknowledged she was under the influence of drugs and had a history of drug abuse upon admission to county jail).

### *2. Subjective Prong: Defendants' Culpable State of Mind*

Defendants Wintermute, Wemple and Abrams argue that they did not act with the requisite culpable state of mind under the subjective prong of the deliberate indifference analysis. With respect to Defendant Wintermute, Defendants allege that she acted appropriately pursuant to the "chain of command" by following Defendant Byrne's instructions, and that Plaintiff's allegations only focus on Defendant Byrne's "failure to ensure medical staff were in the facility

11

that resulted in their undertaking that action." *See* Dkt. No. 16-3 at 8. Additionally, Defendants allege that Wintermute acted with "deliberate consideration" for Decedent, rather than deliberate indifference to his medical needs. *Id.* at 9. With regard to Defendants Wemple and Abrams, Defendants argue that "nothing is alleged against them" and there is no indication that they played "any role in decision making." *See id.* at 8.

In the present case, Plaintiff has sufficiently alleged the subjective components to establish the culpable mental state necessary to survive a motion to dismiss with regard to Defendants Wintermute, Wemple and Abrams.

First, the allegations in Plaintiff's complaint, if credited, demonstrate that the Defendants were aware of Decedent's medical condition while performing the detainee's initial processing and medical screening. Where, as here, the detainee requires medical treatment due to intoxication or overdose, "there generally must be evidence that the officers are aware of the ingestion of large quantities of drugs or other intoxicants which, due to the quantities, pose a serious or life-threatening danger to the [detainee], and/or there were obvious signs of distress from the ingestion." *See Bradway*, 826 F. Supp. 2d at 472. Plaintiff's complaint points to the Decedent's numerous and obvious signs of distress from his intoxication and ingestion of oxycodone both before and during his processing at the jail. Before Decedent's arrival at the county jail, Defendants Montrym and Young, in addition to witnesses, observed that Decedent was visibly intoxicated, smelled strongly of alcohol, was covered in urine and speaking incoherently. *See* Dkt. No. 1 at ¶ 4. The complaint does not point to a single instance in which Decedent received any medical treatment or attention to address his presenting symptoms prior to arriving at the Montgomery County jail. According to the allegations in the complaint, Decedent continued to outwardly display the "telltale signs of an overdose" during his admission to the

12

Montgomery County Jail, including vomiting, aspiration, confusion, dizziness, drowsiness, impaired coordination, and trouble breathing." *Id.* at ¶ 23. Plaintiff contends that it is reasonable to infer that Decedent continued to request medical assistance from Defendants Wintermute, Wemple and Abrams given the high level of oxycodone he ingested, or, in the alternative, that Defendants Young and Montrym made the Montgomery County Defendants aware of Decedent's prior requests to go to the hospital.[3] *Id.* at ¶ 24.

Defendants Wintermute, Wemple and Abrams are all alleged to have been present at the relevant periods during Decedent's processing at the county jail. Specifically, Defedants were responsible for processing the Decedent at the time he displayed the alleged presenting symptoms, and were responsible for performing his medical screening. Courts have repeatedly found that officers are sufficiently aware of a detainee's medical symptoms, for the purposes of the subjective analysis, where the detainee displays obvious signs of distress in the officers' presence. *See, e.g.*, *Iacovangelo,* 624 Fed. Appx. at 13 (holding that the defendant had subjective awareness of detainee's drug withdrawal and intoxication during a medical screening where the defendant was aware of the detainee's drug history, a "visual assessment" of the detainee indicated that she was under the influence of drugs, and the detainee was observed vomiting); *Border v. Trumbull Cty. Bd. of Comm'rs*, 414 Fed. Appx. 831, 838 (6th Cir. 2011) (holding that an officer's observation of a detainee's signs of physical incapacity, severe intoxication and obvious disorientation were sufficient under the subjective prong to establish the officer's awareness of the detainee's condition); *Bradway*, 826 F. Supp. 2d at 472 (finding that the officers

---

[3] Plaintiff pleads in the alternative that Defendants Montrym and Young failed to inform the Montgomery County Defendants of Decedent's prior requests to be taken to the hospital. *See id.*

were aware of a detainee's medical condition where the officers witnessed the detainee's drug consumption, he told the officers of his drug consumption and displayed signs of distress).

Further, Defendant Wintermute revealed her own awareness of Decedent's intoxication by requesting assistance from her supervisor because she was "inexperienced with the booking process, especially as it related to intoxicated detainees." *See* Dkt. No. 1 at ¶ 23. Defendant Wintermute also questioned Decedent's "behavior" upon his arrival at the county jail. *Id.* Similar to *Iacovongelo*, where the defendant was put on notice of the detainee's history of drug abuse, Plaintiff contends that both the Decedent and Defendants Montrym and Young informed Defendant Wintermute that the Decedent had recently consumed alcohol and had a history of alcohol and substance abuse. *See id.*

These allegations, viewed in the light most favorable to Plaintiff, plausibly allege that Defendants were on notice of the severity of Decedent's condition. The next relevant inquiry is whether, given their awareness, the Defendants acted in reckless disregard to the substantial risk of harm to Decedent's health. Plaintiff argues that Defendants failed to ensure that Decedent received immediate medical treatment despite Decedent's obvious medical needs. *See* Dkt. No. 23 at 12. The Court agrees. While Defendants insinuate that Defendant Wintermute, in particular, acted with "deliberate consideration" for Decedent, the allegations in Plaintiff's complaint, which the Court must accept as true at this early stage in the proceedings, do not reference a single instance in which any Defendant even attempted to seek medical treatment for Decedent despite his obvious presenting symptoms. Rather, the complaint alleges that, after performing Decedent's processing and initial medical screening, Defendants "did not recommend that Decedent be placed on constant supervision status, which would have required corrections and medical staff to continuously and closely monitor the decedent's medical condition." *Id.* at ¶

26. Defendants also failed to make any efforts to send Decedent to the hospital for further medical evaluation. The alleged facts regarding Decedent's time of death, though disputed by the parties, at least plausibly suggest that Decedent may have died within one to two hours of Defendants' decision not to place Decedent under constant supervisory status. *See Bradway*, 826 F. Supp. 2d at 472 (finding that evidence regarding the collective failure of various officers to bring a detainee to a hospital after the detainee displayed signs of distress requiring hospitalization was sufficient to survive summary judgment on a deliberate indifference claim); *see also Borders*, 441 Fed. Appx. at 838 (holding that officers ignored the substantial risk to a detainee's health where the officers failed to seek assistance from trained emergency technicians or nurses).

Defendants appear to argue that their initial screening and completion of Decedent's paperwork was approved by their supervisor, Defendant Byrne, and that, as a result, they are relieved of liability in this matter. *See* Dkt. No. 16-3 at 6. However, as Plaintiff correctly argues, discovery could potentially reveal that Defendant Byrne relied on Defendant Wintermute, Abrams and Wemple's initial medical assessment of Decedent in approving of their decision to place him directly in a cell without constant supervisory status.

Based on the foregoing, the Court finds that Plaintiff's complaint plausibly alleges that Defendants Wintermute, Wemple and Abrams acted with a culpable mental state sufficient to fulfill the subjective prong of the deliberate indifference analysis.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants Wintermute, Wemple and Abram's partial motion to dismiss is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 9, 2016
      Albany, New York

                                              Mae A. D'Agostino
                                              U.S. District Judge