**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MARTHA McCONVILLE,**

                      **Plaintiff,**

  vs.                                              3:15-cv-00967
                                                           (MAD/DEP)

**JEREMY MONTRYM, JENNIFER YOUNG,
JENNIFER WINTERMUTE, SHAWN BYRNE,
JON WEMPLE, KEVIN ABRAMS,
MICHAEL FRANKO, MICHAEL AMATO, and
THE COUNTY OF MONTGOMERY,**

                      **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **LAW OFFICES OF ELMER ROBERT KEACH, III, P.C.**<br>One Pine West Plaza, Suite 109<br>Albany, New York 12205<br>Attorneys for Plaintiff | **ELMER R. KEACH, III, ESQ.**<br>**MARIA K. DYSON, ESQ.** |
| **OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants Montrym and Young | **MARIA E. LISI-MURRAY, ESQ.** |
| **McCABE, MACK LAW FIRM**<br>P.O. Box 509<br>63 Washington Street<br>Poughkeepsie, New York 12602<br>Attorneys for Defendants Wintermute, Wemple and Abrams | **DAVID L. POSNER, ESQ.** |
| **GOLDBERG, SEGALLA LAW FIRM**<br>8 Southwoods Boulevard<br>Suite 300<br>Albany, New York 12211<br>Attorneys for Defendants Byrne, Franko, Amato and the County of Montgomery | **JONATHAN M. BERNSTEIN, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Martha McConville ("Plaintiff"), as Administratix of the Estate of Kenneth McConville ("Decedent"), brought this action pursuant to 42 U.S.C. § 1983 and state law against Jeremy Montrym and Jennifer Young ("Trooper Defendants"); Jennifer Wintermute, Jon Wemple, and Kevin Abrams ("CO Defendants"); and Michael Franko, Shawn Byrne, Michael Amato, and the County of Montgomery ("County Defendants") on August 7, 2015, alleging various violations of Decedent's constitutional rights.

Presently before the Court are the Trooper Defendants, CO Defendants, and County Defendants' separate motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In addition to all papers submitted by the parties, the Court has carefully reviewed the video evidence submitted physically in DVD format. *See* Dkt. No. 86.

## II. BACKGROUND

The conduct giving rise to this action occurred on the evening of May 9, 2014, when Decedent, a 37-year-old male, died at the Montgomery County Jail from cardiorespiratory arrest caused by the ingestion of alcohol and toxic levels of oxycodone. Decedent was arrested at approximately 8:45 p.m. by Thomas Malley, a Fort Plains Police Officer. *See* Dkt. No. 91 at ¶ 2. Decedent was later transferred into the custody of Defendants Montrym and Young and transported to the State Police Barracks in Fonda, New York. *See id.* at ¶ 4.

Defendants Montrym and Young transported Decedent to the Montgomery County Jail at approximately 11:30 p.m. to be held for arraignment. *See id.* at ¶ 5. Defendants' expert, Dr. Christine M. Stork, reports that without "a depressed level of consciousness or other clear opioid manifestations such as nodding off during the time that [Decedent] was in [the Trooper

2

Defendants'] care, i[t] would be impossible to determine that medical attention was needed." *See* Dkt. No. 85-3 at 43. Dr. Stork opined that need for medical attention would not have been apparent because Decedent exhibited none of the clinical effects noted in her report and can be seen walking around the jail and eating dinner in "an alert state" in the video footage. *See id.*

Defendant Wintermute processed Decedent and spoke to the Trooper Defendants and the Decedent. *See* Dkt. No. 91 at 2. Defendant Wintermute testified that she was on the 4:00 p.m. to midnight shift when Mr. McConville was brought to the Montgomery County Jail by the Trooper Defendants. *See* Dkt. No. 99 at ¶ 2. Defendant Wintermute requested the assistance of Defendant Byrne in the booking process since she was unsure of the paperwork required to book a detainee who had been drinking. *See* Dkt. No. 96-10 at ¶ 17. Defendant Byrne attempted to locate a breathalyzer to determine the Decedent's BAC level but was unable to locate one. *Id*. at ¶ 19. While searching for the breathalyzer, Defendants Wemple and Abrams assisted Defendant Wintermute with booking Decedent. *Id.* By the time booking was completed, Decedent had been frisked at least twice, and no pills were found on his person. *See* Dkt. No. 91 at 15, 35. Mr. McConville was placed in his cell at 12:07 a.m. by Defendant Byrne. *Id.* at 4. As admitted by Plaintiff and clearly demonstrated by the video evidence, various officers visually observed Mr. McConville at the following times: 12:18 a.m., 12:44 a.m., 1:03 a.m., 1:19 a.m., 1:30 a.m., 1:53 a.m., 2:19 a.m., 2:49 a.m., 3;12 a.m., 3:26 a.m., 3:36 a.m., and 4:05 a.m. *See id.* at 5-9. At 4:22 a.m., Officer Oathout found McConville deceased in his cell. *See* Dkt. No. 100-1 at ¶ 37.

In her Complaint, Plaintiff asserted the following claims: (1) Defendants Montrym, Young, Wintermute, Byrne, Wemple and Abrams were deliberately indifferent to Decedent's serious medical needs in violation of the Fourteenth Amendment; (2) Defendants Montgomery County, Franko and Amato implemented municipal policies and practices that directly violated

3

Decedent's constitutional rights, failed to implement municipal policies to avoid constitutional deprivations and/or failed to train and supervise employees in violation of the Eighth Amendment; and (3) Defendants were negligent in failing to address Decedent's conscious pain and suffering in violation of state law. *See* Dkt. No. 44 at ¶¶ 32-52. Plaintiff seeks punitive damages against Defendants Montrym, Young, Wintermute, Byrne, Wemple, Abrams, Franko and Amato.

### III. DISCUSSION

A. **Standard of Review**

*1. Summary Judgment*

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of*

4

*N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

### *2. Deliberate Indifference*

A claim for deliberate indifference to a pre-trial detainee's serious medical needs is properly analyzed under the Fourteenth Amendment. *See Gabriel v. Cty. of Herkimer*, 889 F. Supp. 2d 374, 392 (N.D.N.Y. 2012). Where a person is held prior to trial, "'the cruel and unusual punishment proscription of the Eighth Amendment does not apply' because 'as a pretrial detainee [the plaintiff is] not being punished.'" *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)). Instead, a detainee held prior to conviction receives protection against mistreatment by prison officials under the Due Process Clause of the Fourteenth Amendment. *Id.* However, the standard is the same regardless of whether a deliberate indifference claim is brought pursuant to the Eighth or the Fourteenth Amendment. *See Gabriel*, 889 F. Supp. 2d at 392.

In order to establish a claim for inadequate medical care, the claimant is required to prove "deliberate indifference to his serious medical needs." *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). Pursuant to the Fourteenth Amendment, "the official custodian of an unconvicted detainee may be found liable for violating the detainee's constitutional rights if the official disregarded a risk of harm to the plaintiff of which the official was aware." *Gabriel*, 889 F. Supp. 2d at 392 (citing *Caiozzo*, 581 F.3d at 71). The custodian's liability is dependant on a two prong showing: "(1) that the detainee had a 'serious medical condition,' (2) which the defendant met with 'deliberate indifference.'" *Id.* (quoting *Caiozzo*, 581 F.3d at 72). The deliberate indifference standard incorporates both

objective and subjective elements. *Smith*, 316 F.3d at 183-84. "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Id.* (internal citations and quotations omitted).

Under the objective prong, the plaintiff must demonstrate that the situation was "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Where the plaintiff alleges that the defendant failed to provide any medical treatment for his or her condition, "'courts examine whether the inmate's medical condition is sufficiently serious.'" *Gabriel*, 889 F. Supp. 2d at 392 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). By contrast, where the alleged deprivation concerns the adequacy of the treatment provided, the inquiry centers on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Id.* at 393 (citing *Smith*, 316 F.3d at 186).

With regard to the second, subjective prong, the plaintiff must demonstrate that the "defendant acted with the requisite culpable mental state, that is, with reckless disregard to a known substantial risk of harm." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). In evaluating a detainee's claim for deliberate indifference to serious medical need, "deliberate indifference" constitutes a mental state more blameworthy than negligence; it is a state of mind that is the equivalent of criminal recklessness. *Id.* (explaining that the plaintiff need not prove that the defendant intended for the plaintiff to suffer harm, but the defendant's actions amount to more than mere negligence). Under this standard, it is enough that the defendant "knows of and disregards an excessive risk to [the detainee's] health or safety." *Douglas v. Stanwick*, 93 F. Supp.

2d 320, 324 (W.D.N.Y. 2000) (citing *Hathaway*, 99 F.3d at 553)  The officer must also "'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Hathaway*, 99 F.3d at 553).

### 3. *Qualified Immunity*

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

> For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that *in the light of pre-existing law the unlawfulness must be apparent*."

*Mollica v. Volker*, 229 F.3d 366, 370-71 (2d Cir. 2000) (quoting *Anderson v. Creiehton*, 483 U.S. 635, 640 (1987)) (emphasis in original).  "Where the right at issue in the circumstances confronting police officers . . . was clearly established but was violated, the officers will nonetheless be entitled to qualified immunity 'if . . . it was objectively reasonable for them to believe their acts did not violate those rights.'"  *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quotation and other citation omitted).

"Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent."  *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (citations omitted).  "With respect to both the legal

7

question and the matter of competence, the officials' actions must be evaluated for objective reasonableness. . . . That is, '[e]ven if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if "officers of reasonable competence could disagree" on the legality of the action at issue in its particular factual context.'" *Id.* (quotations omitted).

The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner*, 494 F.3d at 367 (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (other citations omitted). "The ultimate question of whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.*, whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court." *Id.* (citation omitted). "However, [a] contention that . . . it was objectively reasonable for the official to believe that his acts did not violate those rights has its principle focus on the particular facts of the case." *Id.* (quotation and other citations omitted).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted).

### 4. *Affidavits of Martha McConville and Raymond Marchand*

8

At the outset, the Court addresses the affidavits of Plaintiff, Martha McConville, Decedent's mother, and of Raymond Marchand. *See* Dkt. Nos. 90-30, 90-31. Plaintiff's affidavit offers only hearsay statements. These include statements made to Plaintiff by Raymond Marchand and Investigator Matice. The Court disregards the inadmissible hearsay in Plaintiff's affidavit. *See* Dkt. No. 90-30.

Likewise, Raymond Marchand's affidavit offers hearsay testimony. *See* Dkt. No. 90-31. Hearsay testimony contained in an affidavit may generally not be considered on summary judgment unless it would be admissible at trial as an exception to the hearsay rule. *See H. Hand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991). Ruled 804(a)(4) and 804(b)(2) of the Federal Rules of Evidence provide an exception to the general bar against hearsay testimony when the declarant is unavailable because of death or illness and the statement at issue is made under the belief of imminent death about its cause or circumstance. Fed. R. Evid. 804. Here, Decedent's statements fall into such a category and are admissible.

However, the Court finds that the statements contained in Mr. Marchand's affidavit do not speak towards any of the pending claims. The Court does not evaluate the *credibility* of the affidavit in its conclusion that it is not probative. Instead, the Court finds that the available video record and deposition testimony show that Decedent was calm and compliant throughout the booking process. Plaintiff makes unsupported denials in her response to Defendants' statements of material facts, but the Court concludes that Defendants acted in a reasonable manner in light of the facts available to them. Even if, as Mr. Marchand claims, Decedent had requested to go to the hospital and had complained of chest pains and vomiting, he did not exhibit behavior or symptoms beyond some moderate level of intoxication that would reasonably alert any Defendant to the existence of a serious medical need requiring medical attention. The Court further notes

9

that at no point during the video footage can Decedent be observed exiting the cell to make a phone call, and he is not observed making a call at the booking desk before he was placed in a cell, consistent with Defendant Wintermute's testimony that Decedent made no call when afforded the opportunity to place a telephone call. Finally, the Court notes that Plaintiff does not mention any call placed to her or Mr. Marchand during the entirety of her deposition testimony.

**B.     Defendants Montrym and Young's Motion for Summary Judgment**

Despite Plaintiff's unsupported denials to various statements of material fact, the record has established that Defendants Montrym and Young did not know that Decedent was in need of medical attention and, therefore, could not have acted with the requisite state of mind. This lack of subjective culpability belies a claim for deliberate indifference to a serious medical need. Although Plaintiff contends that the parties "detail diverse stories to the Court regarding Mr. McConville's condition when he was arrested, and when he was in the custody of the New York State Police," it is plain to the Court that Plaintiff has offered nothing more than bald assertions unsupported by the factual record regarding the time Decedent was in the custody of the Trooper Defendants. *See* Dkt. No. 92 at 2.

The Trooper Defendants arrived around 9:00 p.m. and deny observing any impairment that would lead them to believe that Decedent was intoxicated, but admit smelling alcohol on his breath and person. *See* Dkt. No. 100-1 at 4. The record does not show that the Trooper Defendants knew Decedent was anything beyond "a little" intoxicated. *Id.* Plaintiff cites to the deposition testimony of witness Monica Letizia to suggest that Decedent's intoxication was severe. *See* Dkt. No. 89-8. Contrary to Plaintiff's assertions, Ms. Letizia's characterization of Decedent's behavior as "[n]othing out of the ordinary" is consistent with the accounts of the various Defendants, *see* Dkt. No. 89-8 at 109, and her testimony sheds no light on whether any

10

Defendant knew that Decedent had a serious medical need. At most, her testimony would suggest that Decedent was indeed intoxicated at the time he was arrested. But intoxication, without more, does not require medical attention. Moreover, the Trooper Defendants' deposition testimonies are consistent and show that they observed Decedent speaking coherently, walking, and otherwise functioning without apparent issue. *See* Dkt. Nos. 89-10, 89-32. Given Decedent's ordinary behavior as evidenced by the aggregate testimony and video evidence, the Trooper Defendants responded to the situation in a reasonable manner.[1]

Alternatively, the Court finds that the Trooper Defendants acted in an objectively reasonable manner given the situation, and it was objectively reasonable to believe that their conduct did not violate a federally established right. They are therefore entitled to qualified immunity. The Court grants summary judgment on all claims against Defendants Montrym and Young.

**C.      Defendants Wintermute, Abrams, and Wemple's Motion for Summary Judgment**

Nothing in the record demonstrates that the CO Defendants deviated from standard operating procedures once Decedent was transferred into their custody. The CO Defendants abided by the adopted policy to not admit persons who have a BAC of .25 or higher, and routinely checked on Decedent while he was in custody.

The undisputed facts establish that there was no basis for the CO Defendants to have known that Decedent had ingested oxycodone, there were no items on his person that would suggest to officers that he might have ingested oxycodone, and there was otherwise no indication

---

[1] It is also notable that the Trooper Defendants transferred Decedent into the custody of the Montgomery County Jail. Decedent was admitted to the jail only after undergoing routine booking procedures, during which his admission would have been denied had he had a BAC above .25. *See* Dkt. No. 91 at ¶ 10. This intervening event removes the Trooper Defendants from the realm of being a proximate cause of Decedent's death.

11

that Decedent was impaired by any substance other than alcohol. Nothing in the record suggests that the CO Defendants observed concerning behavior beyond a moderate degree of intoxication. The video record shows Decedent walking around the booking desk in an ordinary manner, eating a meal, and otherwise being cooperative and compliant before being taken to his cell. The record further reflects that after Decedent was placed in his cell, the CO Defendants routinely checked on him under standard operating procedures. Because the CO Defendants did not observe any behavior that would have alerted them to a serious medical need, they could not possess the requisite mental culpability for a claim of deliberate indifference.

In the alternative, the Court finds that the CO Defendants are entitled to qualified immunity. When the CO Defendants acted in accordance with standard policy with respect to booking and routine visual checks, they acted in an objectively reasonable manner and it was objectively reasonable for them to believe that their conduct did not violate any clearly established right. For these reasons, the Court grants summary judgment in favor of Defendants Wintermute, Abrams, and Wemple and dismisses all claims against them.

**D.     Defendants Byrne's Motion for Summary Judgment**

Defendant Byrne also did not act with the requisite culpability. As discussed above, there were no signs that Decedent had ingested anything other than alcohol that would have alerted Defendant Byrne to a serious medical need. Defendant Byrne, in fact, did take into consideration the alcohol intoxication of Decedent when he searched for an Alco-Sensor. Although he was unable to locate the Alco-Sensor, Defendant Byrne acted reasonably when he determined that Decedent was not highly intoxicated given his observation of Decedent. It is notable that his observations of Decedent is all the more reasonable in light of his prior experience with Decedent from previous detention in the Montgomery County Jail. Since he had prior contact with

Decedent, it was reasonable for Defendant Byrne to conclude that he was not exhibiting behaviors that required medical attention.

The record also shows that Defendant Bryne personally checked on Decedent in his cell throughout the night. This monitoring was reasonable in light of the circumstances. Because Defendant Byrne did not act with the requisite mental culpability, the Court grants summary judgment on all claims in favor of Defendant Byrne. In the alternative, the Court finds that Defendant Byrne is entitled to qualified immunity. When Defendant Byrne acted in accordance with standard policy with respect to booking and routine visual checks, he acted in an objectively reasonable manner and it was objectively reasonable for him to believe that his conduct did not violate any clearly established right.

**E.     Defendants County of Montgomery, Amato, and Franko's Motion for Summary Judgment**

"[A] municipality [or municipal entity] can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality [or municipal entity]." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citation omitted). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Id.* (citation omitted); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011). To prevail on a section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (citation omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts

of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 60.

Municipal liability is established "by showing that a policymaking official ordered or ratified the employee's actions-either expressly or tacitly." *Jones*, 691 F.3d at 81 (citation omitted). "Thus, a plaintiff can prevail against a municipality [or municipal entity] by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." *Id.* (citation omitted). To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quotations and citation omitted). "[D]eliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." *Id.*; *see also Cash*, 654 F.3d at 334.

The County Defendants argue that "Sheriff Amato and Michael Franko did not have any involvement in the incident that is the subject of this complaint." Dkt. No. 85-2 at 9. Plaintiff has offered nothing to show that Defendants Amato and Franko had any personal involvement leading up to the death of Decedent. Further, since the Court has determined that no actionable claims exist for the CO Defendants, there can be no supervisory liability for Defendants Amato and Franko. The Court accordingly grants summary judgment on all claims against Defendants Amato and Franko.

Indeed, the officers at the Montgomery County Jail repeatedly checked on Decedent, who appeared to be sleeping, at regular intervals pursuant to existing policies as demonstrated by the

14

testimonial record and videos submitted to the Court. Because the Court has concluded that neither the CO Defendants nor Defendant Byrne acted unreasonably and that Defendants Amato or Franko were not involved at all until after Decedent's death, there are no predicate actions by any policymaking official that trigger municipal liability. As noted above, nothing in the record suggests that any Defendant knew or had any reason to know that Decedent had ingested toxic amounts of oxycodone and in light of that lack of knowledge all Defendants acted reasonably. Because the Court has found that there exist no issues of material fact with respect to the County Defendants, Court grants the motion for summary judgment on all claims.

**F.     State Law Claims**

Since the Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over all state law claims.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants Wintermute, Wemple and Abram's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Defendants Montrym and Young's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Defendants County of Montgomery, Byrne, Amaro, and Franko's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 20, 2018
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge